RECEIVED
JUL - 9 2018
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| TINA JOHNSON | CIV. ACTION NO. 1:17-0534 |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| C H WILKINSON PHYSICIAN NETWORK, et al | MAG. JUDGE HORNSBY |

## MEMORANDUM RULING

Before the court is a "Motion for Summary Judgment by Defendant, C.H. Wilkinson Physician Network" (hereinafter referred to as "Physician Network") (R. #24) wherein the mover seeks to dismiss the instant lawsuit; Physician Network maintains that Plaintiff cannot establish a *prima facie* case of disability discrimination because she cannot show that she was able to perform an essential function of her job and/or that a reasonable accommodation would have enabled her to perform the essential function of her job. Additionally, even if Plaintiff could make that showing, her requested accommodation was unreasonable.

Also before the court is a "Motion to Strike Plaintiff's Statement of Material Facts and to Deem Admitted Material Facts in Defendant's List of Genuine Issues of Material Facts Not in Dispute" (R. #29) filed by Physician Network wherein the mover seeks to strike Plaintiff's statement of material facts because they were untimely filed and not in compliance with Local Rule 7.5 and Federal Rule of Civil Procedure 56(c). The court further notes that Plaintiff's factual allegations in the Statement of Material Facts do not refer or cite the court to summary judgment evidence to support the alleged facts. Even though the court has taken notice of the alleged factual statements, we find that they do

1

not alter nor influence our final conclusions. However, because they are not in compliance with the local and federal rules, and Plaintiff has failed to persuade the court that she had good cause or excusable neglect for this court to extend the deadline[1] to file the statement of material facts, the motion to strike will be granted.

## **FACTUAL STATEMENT**

Plaintiff, Tina Johnson, was hired as a Business Office Assistant I by Physician Network in November 2007 and was terminated on April 27, 2016.[2] Plaintiff's job description included checking in patients, answering the telephone, calendaring for providers, processing x-rays, changing water jugs, carrying supply boxes, and pushing wheelchair-bound patients from their vehicles into the lobby.[3]

Plaintiff was involved in a non-work-related motor vehicle on October 30, 2012, which resulted in injuries to her neck and back.[4] Plaintiff underwent an anterior cervical discectomy fusion surgery on February 26, 2014, which required her to be off work for 12 and one half weeks from February 28, 2014, until May 27, 2014.[5] Physician Network kept Plaintiff's job open during her absence.[6]

Plaintiff was released to work light duty in May 2014; her restrictions included lifting 20 pounds maximum, frequently lifting and carrying no more than 10 pounds and working no more than 32 hours per week.[7] Upon Plaintiff's return to work, Physician Network

---

[1] Fed. R. Civ. P. 6(b)(1)(B).
[2] Defendant's exhibit A, Tracy Rada Affidavit , ¶ 3A; Defendant's exhibit B, Tina Johnson depo. p. 16, lns 6-8.
[3] Defendant's exhibit C; Petition for damages, R. #1-2, ¶ 2.
[4] Petition for Damages, R. #1-2, ¶ 5.
[5] Id. at ¶ 6; Defendant's exhibit D,
[6] Petition for Damages, R. 1-2, ¶ 6.
[7] Defendant's exhibit D.

accommodated all of Plaintiff's work restrictions.[8] In November 2014, Plaintiff was promoted to Business Office Administrator II which included a pay raise and additional job duties.[9]

On January 28, 2015, Plaintiff underwent a second surgery which included a lumbar laminectomy and right microdiscectomy with pedicle screw fusion and graph procedure.[10] Due to the surgery, Plaintiff was off of work for nearly 15 weeks, from January 28, 2015 through May 15, 2015,[11] after which Plaintiff was released to work but restricted to working no more than 32 hours per week.[12] Upon her return to work, Physician Network accommodated Plaintiff's restrictions.[13] On June 23, 2015, Plaintiff's treating physician put more restrictions on her work status which limited her work week to 28-32 hours; he further requested that she be allowed to take frequent breaks.

In January 2016, Plaintiff's physician modified her work restrictions to include (1) no lifting, pulling or pushing greater than 10 pounds, (2) sitting five to six hours per day, and (3) standing and walking three to four hours per day.[14] Physician Network accommodated these additional restrictions.[15]

One of the essential qualifications of Plaintiff's position was to work a regular, 40 hour work week.[16] For 19 months, Physician Network accommodated Plaintiff's work restrictions including agreeing to allow her to work 32 hours per week. Plaintiff failed to

---

[8] Petition for Damages, R. #1-2, ¶ 6; Defendant's exhibit B, Johnson depo. p. 29, lns 19-25; p. 30:1-8.
[9] Petition for Damages, R. # 1-2, ¶ 7; Defendant's exhibit B, Johnson depo. p. 30, lns 9-25, p. 31, lns 1-5.
[10] Petition for Damages, R. #1-2, ¶ 8.
[11] Petition for Damages, R. #1-2, ¶ 8; Defendant's exhibit D.
[12] Id.
[13] Defendant's exhibit B, Johnson depo. p. 37, lns 6-12.
[14] Petition for Damages, R. #1-2, ¶ 10.
[15] Id. defendant's exhibit B, Johnson depo, p. 37, lns 13-20.
[16] Defendant's exhibit A, Tracy Rada affidavit, ¶ 3C-D.

work the agreed-upon 32 hours per week; upon her return to work on May 13, 2015 and until her termination on April 27, 2016, Plaintiff did not work one single 32 hour work week.[17] Due to Plaintiff's failure to work a minimum 32 hours per week, other employees were forced to cover some of Plaintiff's job responsibilities.[18] In her deposition, Plaintiff testified that no other employees performed her job duties.[19]

On February 12, 2016, Tracy Rada, the Practice Manager, met with Plaintiff to discuss her work hours; at that meeting she explained to Plaintiff that it was critical for her to work a minimum of 32 hours per week.[20] Subsequent to the meeting, Plaintiff failed to work the agreed-upon 32 hour work week.[21]

On March 23, 2016, Rada again met with Plaintiff to discuss the importance of her working the 32 hour work week.[22] After the meeting, Plaintiff failed to work the agreed-upon 32-hour work week.[23]

On April 21, 2016, Plaintiff's doctor completed a Medical Inquiry Form for ADA Accommodation noting that Plaintiff could not sit or stand for long periods of time; she needed to take frequent breaks to allow walking and standing; she could not work more than 32 hours per week; and she would need several days off when there was an "onset

---

[17] Defendant's exhibit G; Defendant's exhibit M.
[18] Defendant's exhibit B, Johnson depo. p. 45, lns 16-21, p. 46, lns 1-18.
[19] Plaintiff's exhibit C, pp. 17 and 45.
[20] Defendant's exhibit A, Rada affidavit, ¶ 3M; Defendant's exhibit I, signed summary of February 12, 2016 meeting.
[21] Defendant's exhibit G; Defendant's exhibit H.
[22] Defendant's exhibit J.
[23] Defendant's exhibits G and H.

4

of flare ups."[24] On April 27, 2016, Physician Network informed Plaintiff that it would no longer be able to accommodate her restrictions and terminated her employment.[25]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[26] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[27] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[28] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[29] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[30] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[31] There is no genuine issue of material fact if, viewing the evidence in the light more favorable to the non-moving party, no

---

[24] Defendant's exhibit F.
[25] Petition for Damages, R. #1-2, ¶ 14.
[26] Fed. R. Civ. P. 56(c).
[27] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
[28] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).
[29] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).
[30] Anderson, 477 U.S. at 249.
[31] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

5

reasonable trier of fact could find for the non-moving party.[32] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.[33] The court will construe all evidence in the light most favorable to the nonmoving party, but will not infer the existence of evidence not presented.[34]

## LAW AND ANALYSIS

Plaintiff brings this lawsuit under the Louisiana disability discrimination law which provides in relevant part, the following:

> A. No otherwise qualified person with a disability shall, on the basis of a disability, be subjected to discrimination in employment.
> B. An employer, labor organization, or employment agency shall not engage in any of the following practices;
> ***
>
> (2) Discharge or otherwise discriminate against an otherwise qualified person with a disability with respect to compensation or the terms, conditions, or privileges of employment on the basis of a disability when it is unrelated to the individual's ability to perform the duties of a particular job or position.[35]

To establish an employment disability claim, the plaintiff must establish a *prima facie* case, by showing: (1) she has a disability, as defined by the statute, (2) she is qualified for the job, and (3) an adverse employment decision was made solely because of her disability.[36]

---

[32] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
[33] Anderson, 477 U.S. at 249-50.
[34] Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).
[35] La. R.S. 23:323.
[36] Lindsey v. Foti, 81 So.3d 41, 44 (La.App. 1 Cir. 2011); see also Crain v. Schlumberger Tech. Co., 187 F.Supp.3d 732, 737 (E.D. La. 2016).

6

Louisiana's disability discrimination law is modeled after the Americans with Disabilities Act ("ADA"). Courts routinely rely upon the ADA and the accompanying federal jurisprudence.[37]

Physician Network maintains that Plaintiff cannot show that she was "otherwise qualified." Louisiana Revised Statute 23:323 prohibits an employer from discharging an "otherwise qualified person" with a disability, solely because of her disability. An "otherwise qualified person" is defined as a disabled person, who with or without reasonable accommodations can perform the essential job functions of the employment position she holds or desires.[38] Physician Network also contends that even if Plaintiff was qualified, her request for continued accommodations was unreasonable.

A disabled person is any person who has a physical or mental impairment that substantially limits one or more major life activities.[39] "Major life activities" consist of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.[40]

In order to survive the motion for summary judgment, Plaintiff must show that she is "otherwise qualified." If a plaintiff is unable to make that showing, the court's inquiry ends, and the plaintiff's claims fail.[41] Plaintiff makes such a showing by proving that (1) she is able to perform the essential functions of her job, or (2) a reasonable accommodation would have enabled her to perform the essential functions of her job.[42]

---

[37] Lindsey, 81 So.3d at 44; see also Conine ex rel. Estate of Addie v. Universal Oil Prods. Co., 966 So.2d 763, 767 (La.App.2 Cir.2007).
[38] La. R. S. 23:322(8),
[39] La. R.S. 23:322(3).
[40] La. R.S. 23:322(7).
[41] Credeur v. La. Through Office of Atty. Gen., 860 F.3d 785, 792 (5th Cir. 2017).
[42] E.E.O.C. v. LHC Grp., Inc., 773 F.3d 688, 697 (5th Cir. 2014).

7

"Essential functions" include "the fundamental job duties of the employment position the person with a disability holds or desires. . . ."[43] If an employee is unable to perform the essential functions of her job, and is therefore not "qualified," an employer is not required to accommodate the employee.[44]

The basis for Physician Network's motion is that Plaintiff could not perform an essential function of her job, specifically, to work a 32 hour work week. "[T]here is a general consensus . . . that regular work-site attendance is an essential function of most jobs."[45] In Credeur, the Fifth Circuit recently held that an employee was not "qualified" because she was unable to regularly report to work.[46]

The ADA provides that, in considering whether a function is "essential," a court shall consider: (1) the employer's judgment as to what functions of a job are essential and (2) a written job description, if one has been prepared.[47]

In Hypes v. First Commerce Corp.,[48] the employee could not perform the essential function of being in the office regularly, as near to normal business hours as possible, for a full work day, thus the employee was not "otherwise qualified".[49] Physician Network maintains that Plaintiff's job required full-time attendance. In other words, to regularly work a 40 hour work week; Physician Network notes that in her Petition, Plaintiff acknowledged that "defendants' employees . . . worked form 7:00 a.m. to 5:00 p.m.

---

[43] La. R.S. 23:322(5).
[44] Credeur, 860 F.3d at 795.
[45] Id. at 793.
[46] Id. at 795.
[47] Id. at 792 (citing 42 U.S.C. § 12111(8).
[48] 134 F.3d 721, 726 (5th Cir. 1998).
[49] See also Ceasar v. United Servs. Automobile Ass'n, 102 F. App'x 859 (5th Cir. 2004); Blackard v. Livingston Par. Sewer Dist. 2014 WL 199629 (M.D. la. Jan. 15, 2014); Mincey v. Dow Chem. Co., 217 F.Supp.2d 737 (M.D. La. 2002); Reynolds v. Querbes & Nelson, Inc., 2008 WL 4003749 (W.D. La. Aug. 25, 2008).

Monday thru Thursday with an hour lunch break and 7:00 a.m. to 12:00 p.m. on Fridays."[50] Plaintiff testified in her deposition that she had to physically be in the office to perform her job responsibilities,[51] and that her job responsibilities required her to regularly work as part of a team.[52] Physician Network further relies on the job description for the Business Office Administrator II/Patient Accounts Representative II position. Physician Network argues that the job description infers that reporting to work for a full day was essential.

There is no dispute that Plaintiff cannot and has not worked either a 40 hour or the agreed upon 32 hour work week since her first surgery. When an employee cannot regularly report to work and/or work a full predictable schedule, the employee is not "otherwise qualified."[53] Working a regular and consistent schedule is an essential function of Plaintiff's job; Plaintiff has failed to perform an essential function of her job. Furthermore, Plaintiff's expectation that Physician Network continue to permit her to work a less than 32 hour work week is unreasonable and unrealistic at best. The ADA does not require an employer to create a part-time or light-duty position, when the essential function of the job requires full-time attendance.[54]

## CONCLUSION

For the reasons set forth above, the motion for summary judgment will be granted in Physician Network's favor, dismissing with prejudice Plaintiff's claims.

---

[50] R. #1-2, Petition for Damages, ¶ 11.
[51] Defendant's exhibit B, pp. 32-33.
[52] Id. at p. 33; Defendant's exhibit E, Job Description for Patient Account Representative II.
[53] Credeur, 860 F.3d at 793; Hypes, 134 F.3d at 726; Ceasar, 102 F. App'x at 859; Blackard v. Livingston Par. Sewer Dist. 2014 WL 199629 (M.D. la. Jan. 15, 2014); Mincey v. Dow Chem. Co., 217 F.Supp.2d 737 (M.D. La. 2002); Reynolds v. Querbes & Nelson, Inc., 2008 WL 4003749 (W.D. La. Aug. 25, 2008).
[54] Burch v. Coca-Cola Co., 119 F.3d 305 (5th Cir. 1997); See also Wohler v. St. Tammany Par. Sch. Bd., 2009 WL 4891942 at *3 (E.D. La. Dec. 10, 2009).

**THUS DONE AND SIGNED** in Alexandria, Louisiana on this 9th day of July 2018.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE